**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Case No. 8:25-cr-384-JLB-AAS**

**ALEKSANDR GOLOVCHENKO**
_________________________________/

# DEFENDANT'S SENTENCING MEMORANDUM

Aleksandr Golovchenko respectfully submits this sentencing memorandum and asks the Court to impose a sentence of 180 months' imprisonment. That is the fifteen-year sentence Congress has made mandatory for his production offenses. It is a severe sentence. It is also, considering the correctly calculated advisory Guidelines and the factors Congress directed courts to consider under 18 U.S.C. § 3553(a), a sufficient sentence. More imprisonment is unnecessary.

Mr. Golovchenko does not minimize the seriousness of his conduct. He was a middle-aged adult communicating online with a child, solicited sexually explicit images from her, and encouraged sexual conduct over the internet. He pleaded guilty to three counts of production of child pornography and two counts of coercion and enticement of a minor, without a plea agreement. PSR

¶¶ 1–8[1]. Congress has determined that the production offenses require no less than fifteen years in federal prison. PSR ¶ 67. Mr. Golovchenko does not ask the Court to avoid that punishment. He asks the Court to find that fifteen years is enough.

Several considerations support that conclusion. Probation has agreed that the four-level enhancement originally imposed because the victim was under twelve does not apply and that only a two-level age enhancement applies. Two Guideline objections remain. The five-level "pattern" enhancement under U.S.S.G. § 4B1.5(b)(1) should not apply because the conduct described here arose from one continuing online relationship with one victim and does not establish the separate, independent occasions required by the Guideline. The two-level enhancement under § 2G2.1(b)(2)(A) likewise cannot rest on Probation's stated conclusion that masturbation is a "sexual act," because Congress has given that term a specific definition that does not include self-masturbation. If the five-level pattern enhancement is removed, Mr. Golovchenko's total offense level is 35, his Criminal History Category

1 Note that these citations are to the initial PSR as the Final PSR was not available at the time of filing. Additionally, there was a scriveners error in the initial PSR which caused a paragraph numbering error. Starting on page 7 of the PSR paragraphs 10-16 repeat in sequence. Undersigned has attempted to annotate citations to make it clear which paragraphs are being cited to when paragraphs 10-16 are reference.

remains I, and the advisory range is 168 to 210 months, limited at the bottom by the 180-month statutory minimum.

The individualized sentencing evidence points in the same direction. Mr. Golovchenko is fifty years old and has no sexual-offense history identified in the record. A forensic evaluator administered the Static-99R and placed him at Risk Level II—Below Average if first released before age sixty and Risk Level I—Very Low if first released at age sixty or older. Ex. A at 8–10. The evaluation does not excuse his conduct or portray him as presenting no risk. But it identifies offense-specific cognitive distortions, social isolation, impaired relational judgment, and limited insight that require treatment. But those are identifiable and potentially modifiable treatment targets rather than evidence of a broad antisocial or predatory personality structure. Ex. A at 10–12. A fifteen-year prison sentence, followed by intensive sex-offender treatment, digital restrictions, tracking, and supervised release, is enough to punish Mr. Golovchenko, deter him and others, protect the public, and provide needed treatment.

## I. SENTENCING POSTURE AND GUIDELINE CALCULATION

Mr. Golovchenko pleaded guilty to all five counts charged. PSR ¶ 8. The PSR applies the 2025 Guidelines Manual, groups all five counts because they involve the same victim and acts connected by a common criminal objective or

common scheme and applies U.S.S.G. § 2G2.1. PSR at 8 ¶¶ 14–18.

Probation first calculated a total offense level of 42 and Criminal History Category I. PSR ¶¶ 27–29, 34. Probation has since agreed to reduce the four-level age enhancement to two levels under § 2G2.1(b)(1)(B). The remaining calculations are:

| Ruling | Total Offense Level | CHC | Advisory Table Range | Effect of 180-Month Minimum |
|---|---|---|---|---|
| **Probation's revised calculation** | 40 | I | 292–365 months | 292–365 |
| **Pattern enhancement removed** | 35 | I | 168–210 months | 180–210 months |
| **Sexual-act enhancement removed** | 38 | I | 235–293 months | 235–293 |
| **Both disputed enhancements removed** | 33 | I | 135–168 months | 180 months under § 5G1.1(b) |

Mr. Golovchenko asks for 180 months under each alternative.

## II. THE COURT SHOULD SUSTAIN MR. GOLOVCHENKO'S REMAINING GUIDELINE OBJECTIONS

### A. The five-level § 4B1.5(b)(1) enhancement should be removed because the government has not established two independent and distinguishable occasions of prohibited sexual conduct.

The government bears the burden of proving by a preponderance of the evidence that an enhancement applies. Section 4B1.5(b)(1) adds five offense levels when a defendant convicted of a covered sex crime "engaged in a pattern

of activity involving prohibited sexual conduct." The Guideline does not define a pattern merely by counting charged counts or calendar dates. Application Note 4(B)(i) requires prohibited sexual conduct with a minor on "at least two separate occasions." U.S.S.G. § 4B1.5 cmt. n.4(B)(i).

Here, Probation points to productions occurring over a mere nine-day window from March 4 until March 13, 2025. PSR ¶ 26. But the PSR elsewhere characterizes the five counts collectively as conduct involving the same victim and "two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." PSR at 8 ¶ 15. The PSR describes an ongoing online relationship conducted through the same social-media platforms, involving continuing communications with the same person and the same underlying goal. PSR at 4 ¶¶ 9–15. The fact that individual productions can be assigned different dates does not itself answer the different question posed by § 4B1.5: whether those events had an independent existence sufficient to constitute separate "occasions."

The Eleventh Circuit's decision in *United States v. Fox*, 926 F.3d 1275 (11th Cir. 2019), sets the governing standard. *Fox* rejected an argument that the occasions must be unrelated, but it did not erase the requirement that they be separate. Instead, the court explained that the events must be "independent and distinguishable from each other." *Id.* at 1280–81. That is the question

presented here.

The ordinary meaning of "occasion" reinforces that distinction. In *Wooden v. United States*, 595 U.S. 360 (2022), the Supreme Court interpreted materially similar "occasions" language in the Armed Career Criminal Act and rejected an approach under which temporal separation alone automatically creates a new occasion. The inquiry instead looks to the timing, location, character, and relationship of the conduct. *Id.* at 369–70. *Erlinger v. United States*, 602 U.S. 821, 841 (2024), likewise emphasized that no particular lapse of time or distance automatically determines the answer. And in *United States v. Rivers*, 134 F.4th 1292 (11th Cir. 2025), the Eleventh Circuit applied that contextual approach to transactions occurring on different days, recognizing that conduct separated in time can still form a single criminal episode when its circumstances, participants, purpose, and character tie it together. Mr. Golovchenko recognizes these decisions construe the ACCA rather than § 4B1.5. Their relevance is the ordinary meaning they give the same operative idea: an "occasion" is more than a date on a calendar. The defense preserved that position in its PSR objections.

The defense also recognizes the adverse authority. In *Fox*, repeated sexual exploitation of the same child could satisfy § 4B1.5 even though the abuse was related and ongoing. 926 F.3d at 1280–81. And in *United States v.*

*Isaac*, 987 F.3d 980 (11th Cir. 2021), the court found a pattern where production occurred on two different days and was expressly “not continuous,” with other events separating the two episodes. *Id.* at 994. *See also United States v. Boone*, 97 F.4th 1331 (11th Cir. 2024). Those decisions show that related conduct can qualify; they do not hold that every act occurring on another day necessarily does. In both *Isaac* and *Boone*, the courts emphasized distinct, compartmentalized instances of abuse. *Isaac* involved episodes that were expressly 'not continuous' and separated by other events. Here, by contrast, the PSR itself describes a single, uninterrupted nine-day span involving one ongoing online relationship. PSR at 4 ¶¶ 9–15.

Those decisions show that related conduct can qualify; they do not hold that every act occurring on another day necessarily does. *Isaac* illustrates the factual distinction: the court emphasized that the two episodes there were “not continuous” and were separated by other events. Here, the PSR itself describes one ongoing online relationship, one victim, the same channels of communication, the same continuing relational dynamic, and conduct it groups as connected by a common criminal objective or common scheme. PSR at 4 ¶¶ 9–15, at 8 ¶ 15.

That distinction also matters because § 4B1.5 is titled “Repeat and Dangerous Sex Offender Against Minors,” and its background explains that it

addresses offenders who present a continuing danger to the public. U.S.S.G. § 4B1.5. Applying five more levels only because three productions within the same continuing online relationship received three dates stretches the "pattern" enhancement beyond the separate-occasion requirement that gives the provision limiting force.

The Court should sustain the objection to PSR ¶ 26 and remove five levels under § 4B1.5(b)(1). With Probation's agreed age correction, that ruling reduces Mr. Golovchenko's total offense level from 40 to 35.

**B. The Court should give no additional sentencing weight to § 2G2.1(b)(2)(A) because sexual contact is present in the overwhelming majority of production offenses and does little to distinguish Mr. Golovchenko's conduct from a typical § 2G2.1 case.**

The two-level increase under U.S.S.G. § 2G2.1(b)(2)(A) should not result in additional imprisonment beyond the fifteen-year mandatory minimum. Although the enhancement may technically apply, the Sentencing Commission's own empirical study shows the conduct captured by it is not an unusual aggravating feature of a child-pornography production offense. It is present in the overwhelming majority of cases sentenced under § 2G2.1.

Section 2G2.1 already begins at offense level 32 for the sexual exploitation of a minor for purposes of producing sexually explicit material. The Guideline then adds two levels when the offense involves a "sexual act or

sexual contact." U.S.S.G. § 2G2.1(b)(2)(A). While sexual contact is unnecessary in every production case, the statutory and Guideline definitions of sexually explicit conduct also encompass conduct such as the lascivious exhibition of the genitals, the Commission's data show that sexual contact is nevertheless the norm rather than the exception.

In its comprehensive study of federal child-pornography production cases, the Sentencing Commission examined every § 2G2.1 offender sentenced in fiscal year 2019. Of the 512 production offenders studied 80.9% were sentenced for offenses involving sexual contact. U.S. SENT'G COMM'N, *Federal Sentencing of Child Pornography: Production Offenses* 88 at tbl. 4 (2021). Thus, fewer than one in five § 2G2.1 cases did not involve sexual contact. *Id*.

That empirical reality matters when determining what sentencing weight the enhancement deserves. A specific offense characteristic ordinarily helps distinguish a defendant whose conduct is materially more aggravated than the conduct already captured by the base offense level. But an enhancement that applies in over four out of every five cases does comparatively little sorting. Rather than identify an exceptional production offender, § 2G2.1(b)(2)(A) captures conduct occurring in the mine run of production cases.

The Commission's study provides an additional reason to look beyond

the binary application of the enhancement. Of all fiscal year 2019 production cases, 51.2 percent involved an offender who personally sexually contacted a victim, while another 4.5 percent involved sexual contact by an adult co-participant. By contrast, 25.2 percent involved the victim engaging in sexual contact alone or with another victim. *Id*. The Guideline assigns the same two levels across these materially different factual circumstances.

Mr. Golovchenko's case falls within that important distinction. The offense was committed remotely. Mr. Golovchenko was in Oregon and Victim 1 was in Florida, and their communications occurred through TikTok, Snapchat, and video communications. PSR at 4 ¶¶ 9–15. There is no allegation that Mr. Golovchenko ever physically touched Victim 1 or was physically present when the charged productions occurred. The conduct remains serious: he encouraged and solicited sexually explicit conduct by a child through electronic communications. But an enhancement that treats remote self-directed conduct by the victim in the same way as an adult offender's physical sexual contact with a child does not show that additional years of incarceration are necessary.

The Commission originally adopted § 2G2.1(b)(2) because it viewed production involving a sexual act or sexual contact as more serious than production of an image without this conduct. See U.S.S.G. App. C, Amend. 664

(effective Nov. 1, 2004). That categorical judgment explains why the enhancement applies. It does not require the Court, nearly two decades later and with the benefit of the Commission's empirical data, to assign the enhancement full weight under § 3553(a). The Commission now knows that the characteristic applies to about 81 percent of production cases. An aggravating characteristic so common among offenders governed by the same Guideline has limited ability to distinguish the relative seriousness of an individual case.

After *Booker*, the Guidelines are advisory, and a sentencing court may consider whether a Guideline or specific offense characteristic produces a sentence greater than necessary given its underlying reasoning and its operation in practice. *Kimbrough v. United States*, 552 U.S. 85, 101–10 (2007). The Court need not allow the two levels generated by § 2G2.1(b)(2)(A) to dictate additional imprisonment simply because the enhancement technically applies.

Here, the base offense level already imposes severe punishment for inducing a child to engage in sexually explicit conduct for purposes of producing visual depictions. The age enhancement separately accounts for the victim's youth. The computer enhancement separately accounts for the use of electronic communications to facilitate the offense. And Congress independently requires at least fifteen years of imprisonment. Against that

backdrop, adding further years because the offense also had a feature present in 80.9 percent of § 2G2.1 cases would give disproportionate weight to a characteristic that does little to distinguish Mr. Golovchenko from the mine run production offender.

The Court should calculate the Guidelines as required, but give § 2G2.1(b)(2)(A) little or no independent weight when determining the sentence sufficient under § 3553(a). A 180-month sentence already accounts for the seriousness of the conduct and satisfies the purposes of sentencing.

## III. A 180-MONTH SENTENCE FULLY SATISFIES 18 U.S.C. § 3553(a)

Whether 180 months results from the Guideline rulings themselves or requires a variance, the ultimate statutory question is the same. The Court must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). The advisory range is an important starting point, but it remains one consideration within the individualized assessment Congress requires. *Gall v. United States*, 552 U.S. 38, 49–50 (2007).

### A. Fifteen years reflects the seriousness of these offenses and provides substantial punishment and deterrence.

There is no need to reduce the offense to justify a fifteen-year sentence. The conduct was serious. Mr. Golovchenko was the adult. The victim was a

child. The communications became sexual, he sought sexually explicit material, and he encouraged the production of that material through electronic communications. PSR at 4 ¶¶ 9–15. Those facts justify punishment.

But fifteen years is punishment of extraordinary magnitude. Mr. Golovchenko is fifty years old. PSR at 3. A 180-month sentence represents a major portion of his remaining adult life. It removes him from his family and community for a decade and a half, exposes him to the restrictions inherent in federal incarceration, and will be followed by a statutory supervised-release term of at least five years and potentially life and sexual offender registration as well. PSR ¶¶ 70–72, 86. A reasonable person contemplating those consequences would understand that federal law treats this conduct with the utmost seriousness.

The Court can recognize both propositions at once: the conduct was serious enough to justify severe punishment, and the fifteen years Congress already requires are sufficient to provide that punishment.

**B. Mr. Golovchenko's age and individualized risk assessment show fifteen years are sufficient to protect the public.**

Protection of the public is important in a case involving a child. The most useful mitigation evidence is not an assurance from Mr. Golovchenko or his family that he will never offend again. It is an individualized assessment of

risk and the conditions capable of reducing that risk.

Dr. Dolly Ferraiuolo conducted an in-person biopsychosocial evaluation, reviewed offense materials from the defense, and administered the Static-99R sexual-recidivism instrument. Ex. A at 1, 8–10. The assessment produced a conditional score of zero if Mr. Golovchenko is first released before age sixty, corresponding to "Risk Level II:" Below Average Risk. If his first release occurs at age sixty or older, the score falls to negative two, corresponding to "Risk Level I:" Very Low Risk. Ex. A at 8–10.

That result is not a prediction of certainty, and the evaluator expressly says so. The Static-99R does not answer whether an individual will or will not reoffend. It measures relative actuarial risk and must be considered with dynamic factors, treatment, and supervision. Ex. A at 8–10. That measured conclusion is more useful than an absolute claim because it identifies what the Court actually needs to know: risk is not static, age materially reduces it, and identifiable risk factors can be addressed.

A fifteen-year sentence imposed on a fifty-year-old defendant spans the age period that the evaluator identifies as materially significant. The assessment finds below-average actuarial risk even under the more conservative assumption of release before sixty and very-low actuarial risk once first release occurs at sixty or older. Ex. A at 9. The evaluator also

identified no prior sexual-offense charge or conviction and no prior nonsexual violent conviction in the materials available to her. Ex. A at 9. His formal criminal-history classification is Category I. PSR ¶ 34.

The evaluation is equally important for what it does not say. It does not portray Mr. Golovchenko as fully rehabilitated or as having complete insight. Dr. Ferraiuolo identified rationalization, distorted beliefs about age and developmental maturity, impaired relational judgment, limited emotional insight, social isolation, and deficient adult relational boundaries. Ex. A at 10–12. Those are serious findings, and Mr. Golovchenko should receive a sentence that takes into considerations those factors, especially during a period of supervision following his incarceration.

But Dr. Ferraiuolo did not find that those features reflected a broad antisocial or predatory personality structure. Instead, she identified them as specific, potentially modifiable psychological and behavioral mechanisms amenable to structured offense-specific treatment, improved age-appropriate adult relationships, digital safeguards, and community supervision. Ex. A at 11–12. She recommends comprehensive psychosexual evaluation, evidence-based sexual-offense treatment addressing cognitive distortions and victim impact, individual psychotherapy, and grief-focused counseling where clinically appropriate. Ex. A at 12.

The Guidelines themselves recognize that "[t]reatment and monitoring are important tools" for supervising offenders sentenced under § 4B1.5. U.S.S.G. § 4B1.5 cmt. n.5. Probation likewise identifies sex-offender treatment, searches, registration requirements, prohibition on contact with minors, computer restrictions, limitations on employment involving minors, and a prohibition on contact with the victim as potential supervised-release conditions. PSR ¶ 86.

The public-safety inquiry does not present a choice between incarceration and supervision. Mr. Golovchenko will receive both. Fifteen years provides prolonged incapacitation. His advancing age reduces actuarial risk before he returns to the community. Treatment can target the specific distortions and relational deficits identified in the evaluation. And supervised release can impose intensive monitoring and restrictions after incarceration. Nothing in § 3553(a)(2)(C) requires the Court to add years beyond fifteen where those combined protections are sufficient.

**C. Mr. Golovchenko's history and characteristics provide context for the person being sentenced without excusing his conduct.**

Section 3553(a)(1) requires the Court to sentence a person, not merely an offense level. Mr. Golovchenko's history does not excuse what he did. It does, however, give the Court a fuller account of the individual who will serve the

sentence.

Mr. Golovchenko was born and raised in Ukraine and immigrated to the United States at about fifteen years old. Ex. A at 2. His childhood included significant family disruption. The evaluation describes alcohol misuse by his father, conflict and violence within his parents' relationship, paternal absence, and the eventual breakdown of that relationship. Ex. A. The death of Mr. Golovchenko's younger sister during childhood was significant; he described an acute grief reaction and continuing memories associated with that loss. Ex. A. Probation itself identifies his "lack of paternal guidance during his upbringing" as a factor that may justify a variance under § 3553(a)(1). PSR ¶ 85.

None of that caused the offenses, and the evaluation does not suggest otherwise. Dr. Ferraiuolo expressly states that the identified psychological mechanisms "do not excuse or diminish adult responsibility." Ex. A at 12. The value of that history is explanatory rather than exculpatory. It helps identify longstanding emotional and relational vulnerabilities that treatment can address.

Mr. Golovchenko still built substantial parts of an otherwise conventional adult life. He graduated from Woodburn High School after immigrating to this country without fluency in English. PSR ¶¶ 58–59. He has worked in construction, cabinet building, battery manufacturing, and delivery

work. PSR ¶¶ 61–64. The record also documents honorable service in the United States Army National Guard. Ex. C.

He has meaningful physical-health issues too. The PSR reports a history of seizures managed with Depakote, gout, recurrent blood clots requiring long-term anticoagulation with Eliquis, poor circulation, and leg swelling. PSR ¶¶ 50–53. These conditions do not independently demand a different sentence, but they are part of the circumstances in which a fifty-year-old man will experience a fifteen-year federal prison term.

The letters submitted as Exhibit B add another dimension. They do not try to contradict the offense evidence. His brother expressly recognizes the seriousness of the case and the need to protect the minor involved, while describing the brother he has known as caring, hardworking, and willing to help his family. Ex. B. A family friend who has known Mr. Golovchenko for more than thirty years likewise describes repeated acts of practical help, generosity, and friendship while acknowledging the seriousness of the charges. Ex. B. His mother describes a son who worked, helped support the family after their immigration, and remained connected to his nieces, nephews, and extended family. Ex. B.

Those accounts do not negate the conduct before the Court. Their significance is that the conduct is not the whole of Mr. Golovchenko's fifty

years. Section 3553(a)(1) requires the Court to consider the entire person.

**D. Mr. Golovchenko accepted legal responsibility without receiving the benefit of a plea agreement.**

Mr. Golovchenko pleaded guilty to all five counts. He did so without a written plea agreement and without the government dismissing any count in exchange for his plea. PSR ¶¶ 8, 69. Probation concluded that the plea was timely and awarded the full three-level reduction for acceptance of responsibility. PSR at 8 ¶ 13, ¶¶ 27–28.

The defense does not rely on exaggerated claims of extraordinary remorse. The forensic evaluation likewise identifies areas in which his insight remains incomplete and in which he rationalized offense-related behavior. Ex. A at 2, 11–12. That candor is important. Rehabilitation in a case like this requires more than saying the correct words before sentencing. It requires confronting distorted thinking through treatment. Mr. Golovchenko's guilty pleas are an objective first step: he did not require the child to testify, did not force the government to prove five counts and accepted convictions carrying mandatory terms measured in decades. His remaining work is treatment work, and the evaluation gives the Court a concrete roadmap for it.

**E. A sentence beyond 180 months would be greater than necessary.**

The question at the end of the § 3553(a) analysis is not whether Mr.

Golovchenko deserves serious punishment. He does. The question is what an additional year, or five, or ten; beyond fifteen years would accomplish that a fifteen-year sentence, treatment, and rigorous supervision would not.

At 180 months, Mr. Golovchenko receives a punishment Congress has already defined as the minimum for a production offense. He will spend much of his remaining adult life in prison. He will age through the period the actuarial assessment identifies as associated with a material reduction in sexual-recidivism risk. He can receive offense-specific treatment directed at the distortions and relational deficits identified by the evaluator. And when he returns to the community, he can be subject to extensive supervision, monitoring, digital restrictions, registration requirements, and treatment conditions.

If the Court sustains the § 4B1.5 objection, 180 months is the bottom of the operative 180-to-210-month Guideline range. If the Court also sustains the § 2G2.1(b)(2)(A) objection, 180 months is the Guideline sentence mandated by § 5G1.1(b). And even if the Court overrules either or both objections, the same sentence is warranted as a variance because the resulting mechanical range does not change Mr. Golovchenko's age, Criminal History Category I, individualized actuarial risk, treatment needs, history, acceptance of responsibility, or the substantial protection provided by supervised release.

A fifteen-year sentence is not an act of leniency that overlooks the victim or reduces the offense. It is a severe federal sentence that recognizes both the harm caused and the statutory command that punishment be no greater than necessary. On this record, a longer sentence would add incarceration without materially advancing punishment, deterrence, public safety, or rehabilitation. Section 3553(a) requires no more.

## CONCLUSION

Mr. Golovchenko respectfully asks the Court to sustain his objections to U.S.S.G. §§ 4B1.5(b)(1) and 2G2.1(b)(2)(A) and impose a sentence of 180 months' imprisonment, with the terms imposed on the counts of conviction running concurrently to the extent permitted by law, followed by a term of supervised release with conditions directed toward treatment, monitoring, and public safety.

DATED this 1st day of September 2026.

Respectfully submitted,

CHARLES L. PRITCHARD, JR.
FEDERAL PUBLIC DEFENDER

*/s/ Ryan J. Maguire*
Ryan J. Maguire,
Assistant Federal Defender
Florida Bar No. 117534
400 North Tampa St. Suite 2700
Tampa, FL 33602

Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: ryan_maguire@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of September 2026, a true copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

Courtney Derry, AUSA

*/s/ Ryan J. Maguire*
Ryan J. Maguire, Esq.
Assistant Federal Defender